UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TUTHILL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 C 2758 |
| | ) | |
| ARVINMERITOR, INC., | ) | Judge Joan B. Gottschall |
| ARVINMERITOR TECHNOLOGY, | ) | |
| LLC, MERITOR HEAVY VEHICLE | ) | Magistrate Judge Arlander Keys |
| STSTEMS, LLC, and ROCKWELL | ) | |
| HEAVY VEHICLE SUSUPENSION | ) | |
| SYSTEMS, INC., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tuthill Corporation ("Tuthill") has filed suit against defendants ArvinMeritor, Inc., ArvinMeritor Technology, LLC, Meritor Heavy Vehicle Systems, LLC, and Rockwell Heavy Vehicle Suspension Systems, Inc., (collectively "ArvinMeritor") seeking a declaratory judgment that its accused vehicle suspension systems do not infringe the patents-in-suit owned by ArvinMeritor and, further, that the patents-in-suit are invalid. Presently before the court is ArvinMeritor's motion to dismiss portions of the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Specifically, ArvinMeritor seeks to have dismissed Tuthill's claims for declaratory judgment of noninfringement and invalidity of ArvinMeritor's U.S. Patents Nos. 6,733,020 (the "'020 patent"), 6,866,840 (the "'840 patent"), and 6,871,864 (the "'864 patent") (collectively the "RV patents") on the grounds that there is no substantial case or controversy of sufficient immediacy and reality to support Tuthill's

1

action with regard to the RV patents. For the reasons set forth below, ArvinMeritor's motion to dismiss Tuthill's suit with respect to the RV patents is denied.

**I. BACKGROUND**

ArvinMeritor's three RV patents relate to various elements of a vehicle suspension system suitable for use in recreational vehicles. Tuthill also manufactures a suspension system suitable for use in recreational vehicles, known as the RD2300 RV Suspension (the "RD2300"). According to ArvinMeritor, Tuthill became aware of ArvinMeritor's RV patents during the course of discussions of another of Tuthill's suspension systems that allegedly fell within the scope of a different suspension system patent held by ArvinMeritor.[1] ArvinMeritor brought the possible infringement of the RV patents by the RD2300 to Tuthill's attention in a September 23, 2005 letter (the "September 23rd letter") to George Pappas ("Pappas"), Tuthill's patent attorney. ArvinMeritor's Memo. in Supp. Ex A. In its letter, ArvinMeritor expressed the hope that the matter could be resolved amicably, but also noted that it was otherwise prepared to take legal action. *Id.* Pappas responded to ArvinMeritor via a letter dated December 19, 2005 (the "December 19th letter"), stating that the RD2300 suspension was still in the design phase, and had not yet been placed into production. ArvinMeritor's Memo. in Supp. Ex B. Furthermore, Pappas opined, in his preliminary judgment, the RD2300 suspension was not covered by the RV patents and/or the RV patents were invalid and unenforceable. *Id.* According to ArvinMeritor, there was no further discussion of Tuthill's RD2300 with respect to the RV patents until Tuthill filed its suit seeking a

---

[1] In the instant suit, Tuthill also seeks declaratory judgment with respect to the latter patent. However, ArvinMeritor does not seek dismissal of Tuthill's claims with respect to that patent and it is thus not relevant to the motion at bar.

declaratory judgment on May 16, 2007.[2] However, a letter from ArvinMeritor to Tuthill, dated February 21, 2006 (the "February 21st letter"), stated that Robert Zirlin ("Zirlin") of Meritor "is writing to Mr. Greg Rocque of Tuthill." Tuthill's Brief in Opp. Ex. A-2.

Tuthill disputes ArvinMeritor's assertion that communications concerning the alleged infringement of the RV patents by the RD2300 ended with the December 19th letter. Tuthill adduces the affidavit of Gregory Rocque ("Rocque"), president of the Tuthill Transportation Technologies division of Tuthill, Inc., who avers that he discussed ArvinMeritor's accusations of infringement with executives from ArvinMeritor, without achieving any manner of resolution. Decl. of Rocque ¶ 4. Rocque refers specifically to meetings on October 18, 2006 and January 4, 2007, with Sergio Carvalho ("Carvalho"), Vice-President and General Manager for Suspension Systems and Trailer Products at ArvinMeritor. *Id.* Rocque attests that at these meetings he unsuccessfully attempted to resolve, *inter alia*, ArvinMeritor's accusations of infringement with respect to the recreational vehicle suspension systems. *Id.* Moreover, Rocque avers that by the time of the October 18, 2006 meeting, Tuthill had been selling the RD2300 suspension system for many months, and that in the spring of 2007, he was informed by several of Tuthill's customers that ArvinMeritor had informed them that Tuthill's products infringed ArvinMeritor's patents. *Id.* at ¶¶ 4-5. As a result, according to Roque, Tuthill brought the instant declaratory judgment suit to resolve the accusations of infringement. *Id.* at ¶ 6. Tuthill also adduces a letter to Pappas stating that "other issues raised" in addition to the patent not at issue in this motion would be the subject of communications between

---

[2] ArvinMeritor admits that discussions between ArvinMeritor and Tuthill did continue during this interval with respect to the other patent and accused product not at issue in this motion.

3

Rocque and ArvinMeritor. Tuthill's Resp. Brief Ex. A-2. Tuthill claims that "other issues raised" refers to the RD2300's alleged infringement of the RV patents.

ArvinMeritor disputes Tuthill's recitation of facts, producing an affidavit by Carvalho, who avers that he never discussed the RV patents with Rocque, but only discussed issues related to the other patent not at issue in this motion. Decl. of Carvalho ¶ 4. Carvalho avers that at the time of the alleged discussions the RV patents were outside of his area of responsibility or authority. *Id.* at ¶ 5. ArvinMeritor argues that the fact that the RD2300 was actually in production is "of no moment," and all that matters is ArvinMeritor's knowledge of the development, which it derived from Pappas' letter of December 19, 2005.

## II. ANALYSIS

Article III of the U.S. Constitution states, in relevant part: "The judicial Power shall extend to all cases in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; …. U.S. Const. art. III § 2. The language of Article III has been generally held to require that federal courts may exercise jurisdiction over subject matter in actions only where there exists an actual case or controversy. *Clinton v. City of New York*, 524 U.S. 417, 429 (1998). Tuthill brings the instant suit for declaratory judgment under 28 U.S.C. § 2201(a), which states, in relevant part:

> In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C § 2201. The burden of establishing declaratory judgment jurisdiction is on the party originally bringing the action. *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007). Since the U.S. Supreme Court's 2007 decision in *MedImmune, Inc. v. Genentech, Inc.*, the standard for establishing jurisdiction over a declaratory judgment action requires that:

> [T]he dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.… Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

549 U.S. 118, 127 S. Ct. 764, 771 (2007) (internal citations omitted).[3] The Federal Circuit has since dilated on the criteria established by the Supreme Court:

> Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do. We need not define the outer boundaries of declaratory judgment jurisdiction, which will depend on the application of the principles of declaratory judgment jurisdiction to the facts and circumstances of each case. We hold only that where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007).

---

[3] The Court's decision in *MedImmune* overturned the Federal Circuit's prior two-part test that: (1) considered whether conduct by the patentee created a reasonable apprehension on the part of the declaratory judgment plaintiff that it would face an infringement suit; and (2) examined whether conduct by the declaratory judgment plaintiff amounted to infringing activity or demonstrated concrete steps taken with the intent to conduct such activity. *See SanDisk*, 480 F.3d at 1380 ("The Supreme Court's opinion in *MedImmune* represents a rejection of our reasonable apprehension of suit test").

A useful question to ask in determining whether an actual case or controversy exists in the context of a suit seeking declaratory judgment is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff:

> The concepts of "adverse legal rights" and "legal risk," used in [prior] cases to describe the standard for jurisdiction require that there be an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff has preempted it. Without an underlying legal cause of action, any adverse economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction.

*Microchip Tech. Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936, 943 (Fed. Cir. 2006).

The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since. *Benitec*, 495 F.3d at 1344. Further, once that burden has been met, absent further information, that jurisdiction continues. *Id.* at 1344-45 (citing *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993)). Moreover "[t]he rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint [was] filed." *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974). In deciding such a motion pursuant to Federal Rule of Civil Procedure 12(b)(1), the court has broad discretion to consider "whatever evidence has been submitted." *Karazanos v. Madison Two Associates*, 147 F.3d 624, 626 (7th Cir. 1998) (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993) (per curiam)).

In the instant case, ArvinMeritor argues that the September 23rd letter to Tuthill contained no actual assertion or threat of legal action, and that the Tuthill response letter of December 19th stated that the RD2300 suspension unit was still in a design phase and that there was, therefore, no dispute at the time. Moreover, ArvinMeritor claims that

since there were no further communications between Tuthill and ArvinMeritor in the 17 months between the December letter and the filing of this suit (a claim that Tuthill vigorously disputes) the dispute was "dormant" when Tuthill filed this action. ArvinMeritor relies principally on *Trippe Mfg. Co. v. American Power Conversion Corp.*, 46 F.3d 624 (7th Cir. 1995), in support of its contention that the long latency between the December 19th letter and the filing of this suit, and the alleged lack of communication in response to Tuthill's claim that the RD2300 was still in the design phase, both support the notion that there is no case or controversy between the parties and, consequently, the court should dismiss this portion of the case for lack of declaratory judgment jurisdiction.

However, *Trippe* is distinguishable from the instant case. In *Trippe*, a trademark case, the Seventh Circuit found that the district court correctly dismissed a two-count complaint seeking declaratory judgment. 46 F.3d at 626. The appellate court held that the district court correctly found that the initial communications between the parties did not contain any threat of an infringement suit and, with respect to the first trademark count, there was also no controversy when the defendant subsequently admitted that the use of the accused first trademark actually constituted fair use. *Id.* at 627-28. With respect to the second trademark count, which was also the subject of a suit in the District of Rhode Island, the appellate court upheld the district court's finding that there was an insufficient link between the plaintiff's concession of fair use of the first trademark and the Rhode Island lawsuit over the second trademark to support a reasonable apprehension of a suit over the former in the local district court. *Id.* at 628.

As ArvinMeritor concedes, *Trippe* was decided under the "reasonable apprehension" test that has since been overturned by the Supreme Court's *MedImmune*

decision. Thus, ArvinMeritor's contention that there was no threat in the September 23, 2005 letter is immaterial, because, post-*MedImmune*, the court no longer looks to whether this statement created in Tuthill a reasonable apprehension of an infringement suit.[4] Rather, it must look to whether there is an underlying legal cause of action that the declaratory judgment defendant could have brought, or threatened to bring, if not for the fact that the plaintiff's suit for declaratory judgment has preempted it. *Microchip*, 441 F.3d at 943. The court concludes that there is.

ArvinMeritor sent the September 23rd letter to Tuthill, stating that it believed that the RD2300 unit appeared to fall within the scope of the RV patents and that manufacture, use, or offer for sale of the RD2300 would constitute an act of infringement of those patents in violation of 35 U.S.C. § 271. Tuthill's Memo. in Opp. Ex A-1. Furthermore, it stated that any failure by Tuthill to investigate could be considered as evidence of willful infringement, with its concomitant penalties. *Id.* Finally, it stated that ArvinMeritor, although hoping to amicably resolve the matter, was prepared to take legal action.

In response, Tuthill stated that the RD2300 was still in the design phase and was not yet in production. However, it also claimed that the RD2300 did not fall within the scope of the RV patents and/or that the RV patents were invalid. Tuthill's Memo. in Opp. Ex A-2. ArvinMeritor followed with the February 21st letter stating that negotiations concerning these matters would be conducted between ArvinMeritor's Zirlin and Tuthill's Roque. The parties dispute the nature of subsequent communications

---

[4] Parenthetically, ArvinMeritor's claim that there was no threat of legal action in the September 23rd letter does not bear close scrutiny. ArvinMeritor explicitly stated in the letter that if the matter (including infringement of the RV patents) cannot be resolved amicably, "ArvinMeritor is prepared to take legal action." ArvinMeritor's Memo. in Supp. Ex A.

regarding the RD2300 unit and the RV patents; however, Tuthill subsequently marketed the RD2300 suspension unit.

In summary, looking at all the circumstances (as *MedImmune* prescribes) to determine whether an action for a declaratory judgment of noninfringement or patent invalidity presents a justiciable Article III controversy (*see Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1339 (Fed. Cir. 2007)), it is evident that ArvinMeritor perceived a potential infringement of its RV patents by the RD2300 units and warned Tuthill that it was prepared to take legal action unless an accommodation was reached. Tuthill stated that the RD2300 was in its design phase, denied that the RD2300 fell within the scope of the RV patents, and attacked the validity of the RV patents as well. No accommodation was reached between the parties, and Tuthill commenced marketing the RD2300. Therefore, there is an underlying legal cause of action (infringement of the RV patents) that ArvinMeritor could have brought or threatened to bring, if not for the fact that Tuthill has preempted it by this suit for declaratory judgment. *Microchip*, 441 F.3d at 943. Moreover, ArvinMeritor has not dissolved the case or controversy by providing Tuthill with a covenant not to sue, nor has it otherwise formally acknowledged that Tuthill's RD2300 unit does not infringe the RV patents. *See Teva*, 482 F.3d at 1343. Therefore, a justiciable case or controversy, as defined under *MedImmune*, exists between ArvinMeritor and Tuthill with respect to whether the RD2300 unit infringes ArvinMeritor's RV patents. ArvinMeritor's motion to dismiss Tuthill's claims for declaratory judgment of noninfringement and invalidity of the RV patents is consequently denied.

### III. CONCLUSION

For the reasons set forth above, ArvinMeritor's motion to dismiss Tuthill's claims for declaratory judgment of noninfringement and invalidity of ArvinMeritor's RV patents is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 5, 2008